# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KELLY JO PERLOTTO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:12-cv-00685 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on September 5, 2006, alleging that she had been disabled since June 20, 2006, due to high blood pressure, seizures, asthma, and thyroid problems.  *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 107, 112, 135.  Plaintiff's applications were denied both initially (TR 79, 80) and upon reconsideration (TR 85, 86).  Plaintiff subsequently requested (TR 99) and received (TR 64) a hearing.  Plaintiff's hearing was conducted on March 19, 2009, by Administrative Law Judge ("ALJ") Kathleen M. Thomas.  TR 32.  Plaintiff, her husband Craig Perlotto, and vocational expert ("VE"), Kenneth N. Anchor appeared and testified.  *Id.*

On September 4, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 31.  Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since June 20, 2006, the alleged onset date. (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: a seizure disorder status post aneurysm coiling surgery, asthma, diabetes mellitus, and sleep apnea (20 CFR 404.1520(c) and 416.902(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals on of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has residual functional capacity to perform a full range of work at all exertional levels, but should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She should also avoid all exposure to hazards such as machinery and heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 24, 1961, and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 20, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 23-30.

On November 3, 2009, Plaintiff and her attorney signed a request for review of the hearing decision. TR 17. On May 17, 2012, the Appeals Council issued a letter declining to review the case (TR 1), thereby rendering the decision of the ALJ the final decision of the

Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

4

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

5

sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Case 3:12-cv-00685  Document 22  Filed 06/10/13  Page 6 of 16 PageID #: 637

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to consider all material evidence, and specifically, did not consider major medical diagnoses in the record, including her obesity; and (2) did not properly evaluate or assess Plaintiff's credibility as required by SSA Ruling 96-7P. Docket No. 16-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

7

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Consideration of Material Evidence**

Plaintiff argues that the ALJ "failed to consider all material evidence." Docket No. 16-1, at 5-6. Specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's "consistent documented history of Hypertension, Obesity, and Headaches." *Id.* at 6. Defendant responds that the ALJ properly addressed each of these impairments in turn. Docket No. 21, at 7-11.

Plaintiff also states that, while the ALJ found diabetes mellitus to be a severe impairment, "interestingly, there is no treatment record for diabetes mellitus in the Plaintiff's records." Docket No. 16-1, at 6 (emphasis omitted). Plaintiff's contention is erroneous, and contrary to the treatment notes contained within the record. *See* TR 468-502. In discussing Plaintiff's treatment at Regents Medical Center in 2008, the ALJ specifically references that Plaintiff had been recently diagnosed with diabetes mellitus and explicitly cites Dr. Chiu's evaluations, which indicated that Plaintiff "shows good control of diabetes." TR 26; 479, 498.

Regarding a "treatment record for diabetes mellitus in Plaintiff's records," throughout Plaintiff's treatment at Regents Medical Center in 2008 and 2009, Plaintiff's physicians specifically note Plaintiff's diabetes, her compliance with her treatment, with taking her prescribed medication as directed, and with her following up as directed. *See* TR 468-502. During each visit, Plaintiff's physicians also discussed Plaintiff's prescribed diabetes medication

8

and her diabetes treatment plan. *Id.* As can be seen, Plaintiff's contention is unsupported by Plaintiff's medical records from Regents Medical Center and by the ALJ's consideration of them.

Regarding Plaintiff's claim of impairment due to hypertension, the ALJ properly assessed the medical evidence. TR 25. The ALJ emphasized that Dr. Chiu's 2006 and 2007 treatment notes showed that Plaintiff's hypertension was well-controlled and stable. TR 25; 370-80. Additionally, Plaintiff's 2008 and 2009 treatment records from Regents Medical Center likewise address Plaintiff's hypertension, treatment therefore, stability, and control. *See* TR 468-502. As discussed above, the ALJ specifically considered the Regents records.

With regard to obesity, the ALJ specifically noted Dr. Thurman's observation that, upon examination on February 9, 2007, Plaintiff was 61 1/4 inches tall and weighed 228 1/2 pounds. TR 25; 329. After evaluating Plaintiff and considering her conditions, Dr. Thurman concluded that Plaintiff had "no impairment-related physical limitations," but, because of her seizures, "she should not operate motor vehicles, work at heights, or work around dangerous equipment." TR 25; 333.

The ALJ also noted that Plaintiff's physician visits routinely included discussing diet and weight loss, and that Plaintiff had continued to follow-up with Dr. Chiu for dietary counseling. TR 26; 468-502. The ALJ noted Plaintiff's August 2008 report that she had lost four pounds in 2008 through the use of Phentermine, dieting, and walking four miles, five days per week. TR 26; 479. The ALJ additionally noted that Plaintiff presented to Dr. Michael Rhodes for medication refills on March 26, 2009, that her Body Mass Index ("BMI") on that date was 41.6, and that, on that date, she weighed 220 pounds. TR 26, TR 450. Finally, the ALJ discussed that,

9

although Plaintiff claimed that she had gained over 100 pounds, her most recent treatment record at that time, dated June 8, 2009, reported that, on that date, she weighed 208.4 pounds (11.6 pounds less than her examination less than three months prior, and) almost 20 pounds less than she did at her visit with Dr. Thurman in 2007. TR 25; 28; 469. The ALJ's decision demonstrates that she was aware of Plaintiff's weight, BMI, and other conditions, and ultimately found that Plaintiff had no exertional limitations, but would have environmental limitations due to her history of seizures and asthma. TR 25-29.

The ALJ also properly addressed the impact that Plaintiff's headaches may have had on her ability to work. TR 24-28. The ALJ acknowledged Plaintiff's reported history of headaches and treatment therefore, including Plaintiff's successful coil embolization of the left carotid terminus aneurysm and successful integrilin infusion of the carotid artery at Vanderbilt University Medical Center. *Id.* The ALJ also noted Plaintiff's report at a follow-up examination on December 7, 2006, that she was "doing well" and that her headaches had decreased in intensity and were no longer global in location, but were mainly concentrated in the left side. TR 24-25, 445. The ALJ additionally noted that, in January 2007, Plaintiff reported having about two headaches a week. TR 25; 310. The ALJ acknowledged that, as of April 5, 2007, Plaintiff's headaches had decreased in frequency. TR 26; 370. The ALJ noted that Plaintiff again reported headaches in February 2008. TR 26; 498. The ALJ discussed that an August 2008 MRI of the brain due to headaches revealed no new intracranial abnormality or acute process. TR 26; 447. The ALJ stated that the evidence demonstrated that Plaintiff's headaches responded to, and were controlled effectively by, Percocet and Advil. TR 26; TR 468-502. The ALJ further noted that Plaintiff's headaches were "reportedly controlled with Percocet for which she has taken for a

10

Case 3:12-cv-00685   Document 22   Filed 06/10/13   Page 10 of 16 PageID #: 641

prolonged period of time, which does lead the undersigned to find she has adequate relief with Percocet or changes would be made." TR 27. The ALJ properly assessed Plaintiff's claim of impairment due to headache, and found that "the medical evidence of record fail[ed] to establish that the claimant's seizure activity and headaches are of the frequency and/or severity to preclude all work." *Id.*

For the reasons discussed above, the ALJ properly considered all the material evidence in this case, including the medical evidence regarding the "major medical diagnoses" of obesity, headaches, and hypertension. Plaintiff's contentions are unsupported by the record and by the ALJ's discussion. The ALJ's conclusions were supported by substantial evidence. Because there is substantial evidence in the record to support the ALJ's determination, the ALJ's determination must stand.

**2. Plaintiff's Credibility**

Plaintiff also contends that the ALJ did not property assess her credibility, pursuant to SSA Ruling 96-7P. Docket No. 16-1, at 6-7. Specifically, Plaintiff argues that the ALJ committed a "material error" by "merely stat[ing] that she used the criteria outlined in SSR 96-7P in reaching him[*sic*] decision, rather than specifically stating the weight she gave to the claimant's statements and the reasons for that weight as is required by SSR 96-7P." *Id.* at 7. Plaintiff quotes relevant portions of SSA Ruling 96-7P, emphasizing that "'[i]t is not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.'" *Id.* Plaintiff maintains that the ALJ made a single "conclusory statement" and therefore failed to comply with SSR 96-7P.

Defendant responds that the ALJ properly evaluated Plaintiff's credibility because there

11

was considerable inconsistency between Plaintiff's testimony and the evidence as a whole.

Docket No. 21, at 10.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations of disabling symptoms:

> [S]ubjective allegations of disabling symptoms. . . cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing a claimant's subjective complaints of physical impairment, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d

12

1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)).  After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible.  *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ properly employed the requisite two-step process when assessing Plaintiff's credibility, in accordance with 20 C.F.R. § 404.1529.  In step one, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her symptoms. TR 27.  In step two, however, the ALJ determined that Plaintiff's claims regarding the intensity, persistence, and limiting effects of her symptoms were not substantiated by objective medical evidence. TR 27-28.  In support of this determination, the ALJ explained:

> Evidence shows the presence of an aneurysm in 2006, which was coiled.  She has had no residual impairments due to the surgery and she has not returned to her neurosurgeon except on one occasion since surgery, based upon the medical evidence of record.  There is nothing in the record indicating that the claimant's aneurysm was a severe impairment for 12 continuous months.  In fact, she felt well enough to drive herself to the doctor on January 4, 2007.  She does have a history of seizure-like activity and headaches.  However, the medical evidence of record fails to establish that the claimant's seizure activity and headaches are of the frequency and/or severity to preclude all work.  Evidence shows treatment for only two seizures in which she lost consciousness.  Since receiving treatment, she reports that seizures include only dizziness and a spaced-out feeling.  Her headaches are reportedly controlled with Percocet for which she has taken for a prolonged period of time, which does lead the undersigned to find she has adequate relief with Percocet or changes would be made.  She has a history of asthma, but evidence fails to show any significant work-related limitations other than to avoid respiratory irritants.  She has good control of her asthma with lung evaluations

13

showing no wheezing and good breath sounds. Evidence shows
occasional exacerbations of asthma symptoms, but nothing to
preclude all work for 12 continuous months. In September 2008
the claimant was reportedly walking four miles a day, five days a
week, which is not consistent with allegations that she cannot do
any work activity. It also fails to support the treating physician's
opinion that the claimant is deconditioned. The claimant was
diagnosed with mild to moderate sleep apnea, and reported good
symptom relief with a CPAP machine. At the consultative
examination she was able to move about well with no evidence for
limitations in work-related activities other than to avoid machinery
and heights due to seizure activity, reportedly occurring about once
a month at this time. The claimant has good control of her
diabetes with no evidence of end organ damage. The undersigned
notes that based upon the medical evidence of record, the
claimant's medical treatment [h]as been sporadic and her
complaints to treating providers are not consistent with her hearing
testimony.

At the hearing the claimant testified that she has not worked since
2006. She testified of burning, numbness, and tingling in her feet
for which she has been treated for the past six months. But, the
undersigned notes no significant treatment for her feet. Her
testimony of leg numbness causing her to fall is likewise
unsupported by the medical evidence of record. She testified of
arthritis in her joints, but x-rays of her joints have been negative
and there is no clinical evidence consistent with osteoarthritis. She
testified that she takes Percocet about every two days when she
gets a bad headache. Evidence shows longstanding treatment for
headaches with Percocet. While she testified of having two
headaches a week or four a month, the medical evidence of record
fails to show that these headaches are of the severity to preclude all
work. Her testimony of neuropathy in her right hand causing her
to drop things is not supported by the medical evidence of record.
The claimant testified that she has gained over 100 pounds, but the
last treatment note of record dated June 8, 2009, shows a weight of
208.4 pounds, which is about 20 pounds less than what she
weighted at the consultative examination. She testified of
problems with depression and feeling worthless. Evidence shows
she complained of similar symptoms on June 8, 2009, but she has
failed to seek any mental health treatment nor have her symptoms
been of the severity to need emergency room treatment or
hospitalization. The medical evidence of record shows no
diagnosis of depression and/or anxiety. Thus, the undersigned

14

> finds no evidence of a medically determinable mental impairment that would more than minimally limit work activity. Her testimony that she was very active up until June 2006 lacks credibility given the fact she only earned presumptive substantial gainful activity in five years of her life. While the claimant testified of having a seizure once a week, the evidence of record indicates that seizures only consist of dizziness and a spaced out feeling. There is no evidence of loss of consciousness since May 21, 2007. While the claimant testified of more frequent seizure activity, she reported on May 27, 2008, that she had not had a seizure in three months. On February 25, 2008, she reported having about two seizures a month. The undersigned finds the claimant's testimony regarding the frequency of seizures is inconsistent with other evidence. . . .

TR 27-28.

As can be seen, the ALJ's decision specifically addressed in detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, illustrating that these factors were considered. TR 27-28. The ALJ properly analyzed Plaintiff's subjective complaints, clearly identified which evidence she found to be contradictory with other evidence in the record and which evidence she found to be supported by the record, and discussed her reasons for discounting Plaintiff's credibility. The ALJ's determination was supported by substantial evidence. Accordingly, the ALJ's credibility determination must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge